**No. 60567.**—Wm. Henderson [1] *v*. United States, protest 28850–K/12070 (New Orleans).

DONLON, Judge: This case has long been pending, delayed on plaintiff's request awaiting decision of cases testing certain of the questions raised in plaintiff's protest, with respect to a Presidential proclamation in 1939, increasing the duty rate on sugar imported from Cuba. The legality of the rate increases having been established in a series of decisions, plaintiff now contends that this increase in duty rates had not become effective at the time when his sugar was entered at the port of New Orleans on September 12, 1939, and, hence, the increased rates could not lawfully be applied in the liquidation of this entry.

The case has been submitted on stipulated facts, as to which there is no dispute. The issue argued is one of law. It narrows down to a single question, whether the Secretary of Agriculture gave the "public notice," required under paragraph 501 of schedule II of the Cuban Trade Agreement of August 24, 1934 (T. D. 47232), at the moment when he caused the public notice to be filed with the Federal Register Division of the National Archives and Records Service of the General Services Administration, which was at 12:54 p. m. on September 12, 1939, as defendant contends; or whether the "public notice" was given on the day when the Secretary's notice was published in the Federal Register, which was the following day, September 13, 1939, as plaintiff claims.

Inasmuch as plaintiff's sugar was entered at 1:36 p. m. on September 12, 1939, the time when the public notice was given determines whether plaintiff's sugar takes the higher or the lower duty rate.

The stipulated facts include the following:

1. This merchandise is sugar imported from Cuba.

2. It was entered for consumption at New Orleans on September 12, 1939, at 1:36 p. m., eastern standard time.

3. Duty was assessed at the applicable rates proclaimed by the President on May 9, 1934, T. D. 47040, less the 20 percent Cuban preference, because the sugar was entered after 12:54 p. m., eastern standard time, on September 12, 1939.

4. If this sugar had been entered prior to 12:54 p. m., eastern standard time, on September 12, 1939, the collector would have assessed duty at the applicable rates proclaimed by the President under paragraph 501, of schedule II, of the Cuban Trade Agreement of August 24, 1934, T. D. 47232, less the 20 percent Cuban preference.

5. The Secretary of Agriculture signed, at 11:00 p. m. on September 11, 1939, a public notice in accordance with the note to paragraph 501 of schedule II, of the Cuban Trade Agreement of August 24, 1934, in which the Secretary recited the provisions of said note and the fact that the President had suspended the operation of the quota provisions of the Sugar Act of 1937, and gave "public notice" that no equivalent limitation on the importation of any article subject to the Sugar Act of 1937 had been imposed for the period of suspension of the quota provisions of that act.

6. Such public notice was filed with the Federal Register Division of the National Archives and Records Service of the General Services Administration on September 12, 1939, at 12:54 p. m., eastern standard time.

7. The public notice was published in the Federal Register. dated September 13 1939.

8. The Federal Register is the "official publication for such notices."

Plaintiff's protest, as amended, makes several claims. The sole protest claim that mentions the public notice is a claim that the "Public Notices by the Sec-

---

[1] This protest was formerly abandoned, Abstract 49343. The abandonment was set aside and rehearing granted, Abstract 49401.

retary of Agriculture (T. D. 49962 and T. D. 49977) were improperly promulgated, and are *ultra vires*, unwarranted, unconstitutional, illegal, null and void * * *."

The argument presented is, to say the least, inconsistent with that claim. Plaintiff does not argue here that the Secretary of Agriculture "improperly promulgated" the public notice, or that it was "*ultra vires*, unwarranted, unconstitutional, illegal, null and void." To the contrary, plaintiff's argument must be deemed a concession, both of proper promulgation and validity of the public notice, since the argument is directed solely to a difference of view as to the time when public notice was given.

Defendant did not move to dismiss the protest on the ground that the issue prosecuted was not one of the issues pleaded, presumably because, on April 17, 1947, plaintiff amended its protest to include, for the first time, its claim to the duty rate provided in section 403 (a) of title IV of the Sugar Act of 1937. It was the operation of that act which the President suspended, and plaintiff claims the suspension was not yet operative at the moment when this sugar was entered.

With this contention we are unable to agree. Congress has laid down, as defendant's brief notes, the general rule with respect to giving such notice. (44 U. S. C. § 302.) Notice was given in that way, that is, by filing a public notice with the Federal Register Division of the National Archives and Records Service of the General Services Administration. There is nothing to indicate an intention, on the part of Congress, that the Secretary of Agriculture should give this public notice, here in issue, in some other or different way.

We note, although this is not necessarily conclusive on plaintiff, that, in previous litigation, it has been conceded that the correct time of the public notice was, as defendant here contends, 12:54 p. m., eastern standard time, on September 12, 1939. *Olavarria & Co., Inc.* v. *United States*, 37 C. C. P. A. (Customs) 1, C. A. D. 409; *Sucrest Corporation* v. *United States*, 31 C. C. P. A. (Customs) 220, C. A. D. 275.

That time having been stipulated as the time when the public notice was filed with the Federal Register Division of the National Archives and Records Service of the General Services Administration, we hold that this sugar is subject to duty as assessed.

The protest is overruled. Judgment will be entered for defendant.